**HARTFORD STEAM BOILER INSPECTION & INS. CO. v. KLEINMAN et al. (No. 2008.)**

Court of Civil Appeals of Texas. El Paso. March 31, 1927.

Rehearing Denied April 28, 1927.

Insurance ⚖➔422—Damage by gas explosion in fire box and chimney held not covered by "boiler" explosion policy.

Damage by gas explosion in fire box and chimney *held* not covered by boiler explosion policy, defining "boiler" as including steam and feed pipes, blow-off pipe including nearest stop valve, water column and its connection with boiler, steam and water gages and safety valve, and "explosion" as sudden tearing asunder of boiler by "internal pressure of air, gas or liquid if the boiler is described in the schedule as containing it"; "it" not referring solely to last antecedent "liquid."

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Boiler.]

Appeal from District Court, Dallas County; T. A. Work, Judge.

Action by L. Kleinman and others against the Hartford Steam Boiler Inspection & Insurance Company. Judgment for plaintiffs, and defendant appeals. Reversed and rendered.

Lawther, Pope, Leachman & Lawther, of Dallas, for appellant.

McCormick, Bromberg, Leftwich & Carrington, of Dallas, for appellees.

HIGGINS, J. This is a suit by appellees against appellant upon an insurance policy issued by the latter agreeing to indemnify the assured "for loss resulting from damage to property of the assured" "caused by the explosion, collapse or rupture of any boiler described in the schedule in paragraph 14." Paragraph 14 reads:

"14. The boilers on the loss from the explosion of which the insurance under this policy is applicable the pressure approved by the company for each of same respectively, and the premium are as shown in the following:

"Schedule.

"Location of boilers, street and number or other descriptive location, 1300–1302 Commerce St. Town, Dallas. State, Texas. Designating boiler No. 1—2. Type of boiler, C. I. Pounds pressure approved by company, 15 pounds. Premium, $112.00. Total number of boilers, 2. Total premium, $112.00."

Other material terms of the policy read:

"3. (a) The term 'explosion' as used in this policy is understood to include a rupture and a collapse; and either 'explosion' or 'rupture' shall mean only a sudden substantial tearing asunder of a boiler described in the schedule, caused by pressure of steam, or by internal pressure of air, gas or liquid if the boiler is described in the schedule as containing it; (b) and 'collapse' shall mean only a sudden crushing or forcing inward of the furnace or the flues of the boiler, so caused; (c) and the word 'boiler' as used in this policy is understood to include also its steam pipe, feed pipe and blow-off pipe up to, and including, the nearest stop valve; also the water column and its connections with the 'boiler,' the steam and water gages, and the safety valve; and 'boiler,' is understood to mean also any vessel or other apparatus which is subject to internal pressure and which is described in the schedule on this policy."

The boiler was in the basement of a hotel owned by appellees in Dallas, and part of the heating plant of the building. The flue or chimney extended upward in an outer wall of the building. Gas was the fuel used to generate the heat. Early one morning an explosion occurred. The evidence shows it was caused by an accumulation of gas in the fire box; the accumulated gas exploding when the operator undertook to light the gas jet. Aside from some slight damage to the boiler the principal damage was to the wall through which the flue extended. It is evident the accumulation of gas had extended into the flue, and the explosion, originating in the fire

box, extended into and likewise occurred in the flue. The only issue submitted to the jury was as to the amount of the damage, which was fixed at $1,500, with interest from date of the explosion. Upon this finding judgment was rendered in favor of appellees. Plaintiffs' witness Sprau testified:

"As to the nature of the boiler which they had in use there at that hotel, well, it's a cast-iron type of boiler. It is distinguished somewhat from a cylindrical type, in that it is made in sections, the boiler—the two water legs of the boiler extend down to the fire box and form a portion of the fire box of the boiler, and the water legs in turn rest on a cast-iron base, which carries the grates. That, I believe, is as close as I could describe just the type of boiler—the boiler isn't—. As to how the boiler is arranged there with a view to exposing the water to the heat, well, the furnace or fire box is a portion of the water leg of the boiler, and the gas—the hot gases impinge themselves on these water legs, and the hot gases as they pass through the fire box travel forward through the boiler through a series of tubes and then back to the back end of the boiler, through another series, or a single tube—I am not quite clear on that matter—but the gases themselves after being ignited pass three times through the boiler before they reach the stack. That machine that is used down there for heating purposes is made in a number of pieces. It's made up of—the boiler is made up of a series of pieces. The base constitutes the ash pit, and from that point up the boiler is made in sections which are cast individually and then assembled, and the sections are held together with a series of bolts running entirely through them. The water, of course, has to be kept separate from the fire. There is a cast-iron wall between the fire and the water. The various sections are castings; they are all castings. Beginning at the floor the first casting is the base and the ash pit section, and the next casting is the water leg of the boiler, and on top of the cast-iron base or ash pit section the castings are set in a vertical position, and they slip on and are put together with a series of nipples and the bolts through the entire section. In other words, if you take the bolts out of the boiler and pinch those sections apart, they would just turn over on their sides."

Appellants contend the explosions in the fire box and chimney were not covered by the policy. Appellees assert that the boiler, the explosion or rupture of which was insured against, was an unit, and an explosion in any part thereof was covered by the policy, and the so-called fire box was in fact an integral part of the unit so insured.

In the Encyclopedia Americana 1924, vol. 4, p. 166, it is said:

"A boiler, in steam engineering, is a closed vessel for the generation of steam under pressure."

Webster's Universal Dictionary defines boiler:

"(1) Any vessel in which water or other liquids or semiliquids may be raised to ebullition by heat.

"(2) Specifically, a steam boiler; a vessel constructed to hold and sustain an internal pressure, in which, by the application of heat, steam is generated and raised to or above the pressure of the atmosphere, for the purpose of utilizing its intensive energy for the production of mechanical work, for supplying heat by conduction of the steam, and for a number of applications in the industrial arts, as for cleaning, bleaching, etc."

The fire box and chimney were parts of the heating plant, but not parts of the boiler described in the policy. Especially is this true in view of subdivision (c) of paragraph 3, wherein was stated what the word "boiler" was understood to include. The explosions having occurred in the fire box and chimney from gas there accumulated, the resulting damage is not protected by the policy.

The only stipulation in the policy relating to gas explosion is subdivision (a) of paragraph 3. But this has application only if the boiler is described in the schedule as containing it, and the schedule does not so describe the boiler. Appellees say that the word "it" in such subdivision refers solely to the last antecedent "liquid." This position is based upon the grammatical rule referring a relative word to its nearest antecedent, unless the contrary intention appears. The word "it" was perhaps not very correctly used, but the context shows it did not have the limited reference contended for by appellees.

Being of the opinion that the loss sustained in the manner shown by the evidence was not covered by the policy, the judgment is reversed and here rendered for appellant.

Reversed and rendered.